IN THE UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Alan D. Dorrbecker, | C/A No. 9:21-cv-1953-JFA-MHC |
| Petitioner, | |
| vs. | |
| COMMANDER JOHNNY L. MINCEY, Naval Consolidated Brig, Charleston, SC, | **ORDER** |
| Respondent. | |

## I.   INTRODUCTION

Petitioner Alan D. Dorrbecker ("Petitioner"), an inmate at the Naval Brig in Charleston, South Carolina, brings this application for writ of habeas corpus ("Petition") pursuant to 28 U.S.C. § 2241. (ECF No. 1). In accordance with 28 U.S.C. § 636(b) and Local Civil Rule 73.02(B)(2)(c) (D.S.C.), the case was referred to the Magistrate Judge for initial review.

After reviewing the petition, the Magistrate Judge assigned to this action[1] prepared a thorough Report and Recommendation ("Report") and opines that Respondent's Motion should be granted and the Petition should be dismissed. (ECF No. 25). The Report sets

---

[1] The Magistrate Judge's review is made in accordance with 28 U.S.C. § 636(b)(1)(B) and Local Civil Rule 73.02(B)(2)(d) (D.S.C.). The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility to make a final determination remains with the Court. *Mathews v. Weber*, 423 U.S. 261 (1976).

forth, in detail, the relevant facts and standards of law on this matter, and this Court incorporates those facts and standards without a recitation.

Petitioner filed objections to the Report on August 1, 2022 (ECF No. 27), and Respondent filed a Reply to Petitioner's Objections on August 22, 2022. (ECF No. 30). Thus, this matter is ripe for review.

## II.    STANDARD OF REVIEW

A district court is only required to conduct a *de novo* review of the specific portions of the Magistrate Judge's Report to which an objection is made. *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); *Carniewski v. W. Virginia Bd. of Prob. & Parole*, 974 F.2d 1330 (4th Cir. 1992). In the absence of specific objections to portions of the Magistrate's Report, this Court is not required to give an explanation for adopting the recommendation. *See Camby v. Davis*, 718 F.2d 198, 199 (4th Cir. 1983). Thus, the Court must only review those portions of the Report to which Petitioner has made a specific written objection. *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310, 316 (4th Cir. 2005).

"An objection is specific if it 'enables the district judge to focus attention on those issues—factual and legal—that are at the heart of the parties' dispute.'" *Dunlap v. TM Trucking of the Carolinas, LLC*, No. 0:15-cv-04009-JMC, 2017 WL 6345402, at *5 n.6 (D.S.C. Dec. 12, 2017) (citing *One Parcel of Real Prop. Known as 2121 E. 30th St.*, 73 F.3d 1057, 1059 (10th Cir. 1996)). A specific objection to the Magistrate's Report thus requires more than a reassertion of arguments from the complaint or a mere citation to legal authorities. *See Workman v. Perry*, No. 6:17-cv-00765-RBH, 2017 WL 4791150, at *1

(D.S.C. Oct. 23, 2017). A specific objection must "direct the court to a specific error in the magistrate's proposed findings and recommendations." *Orpiano v. Johnson*, 687 F.2d 44, 47 (4th Cir. 1982).

"Generally stated, nonspecific objections have the same effect as would a failure to object." *Staley v. Norton*, No. 9:07-0288-PMD, 2007 WL 821181, at *1 (D.S.C. Mar. 2, 2007) (citing *Howard v. Secretary of Health and Human Services*, 932 F.2d 505, 509 (6th Cir. 1991)). The Court reviews portions "not objected to—including those portions to which only 'general and conclusory' objections have been made—for *clear error*." *Id.* (citing *Diamond*, 416 F.3d at 315; *Camby*, 718 F.2d at 200; *Orpiano*, 687 F.2d at 47) (emphasis added).

## III.    DISCUSSION

As stated above, the relevant facts, the procedural history, and standards of law on this matter are incorporated from the Report. However, by way of brief background, Petitioner was arrested in 2015 and in June of 2017, Petitioner was tried by a court marital convened in Norfolk, Virginia for attempted sexual abuse of a minor, S.M., a then 14-year-old United States citizen and dependent of two United States government employees of the Naval Criminal Investigative Service ("NCIS"). At the time that Petitioner committed the instant offenses, he was serving on active duty in the United States Navy as a Captain at the Naval Support Activity in Naples, Italy. Petitioner pleaded guilty to two specifications of attempted sexual abuse of a child, (in violation of Article 80, Uniform Code of Military Justice ("UCMJ"), 10 U.S.C. § 880) and was also convicted of five other charges for which he had not pleaded guilty, including: one specification of attempted sexual assault of a

child; two specifications of attempted sexual abuse of a child; one specification of violating a lawful general order; and one specification of conduct unbecoming an officer and gentleman, (in violation respectively of Articles 80, 92, and 133, UCMJ, 10 U.S.C. § 880, 892, 933). (ECF No. 15-1 at 2). The presiding military judge sentenced Petitioner to eight years of confinement, forfeiture of all pay and allowances, and dismissal from the naval service. ECF No. 15-1 at 3. As explained in the Report, the Convening Authority subsequently approved the eight years of confinement as adjudged along with Petitioner's dismissal, disapproved the adjudged forfeitures, and ordered the sentence executed. *Id.*

Importantly, Petitioner's case was thereafter submitted to the Navy-Marine Corps Court of Criminal Appeals ("NMCCA") for mandatory review under Article 66, UCMJ, 10 U.S.C. § 866. That Court concluded the approved findings and sentence were correct and affirmed the sentence as previously approved by the Convening Authority. *Id.* at 4. The Court of Appeals for the Armed Forces ("CAAF") denied Petitioner's motion for a grant of review.[2] *Id.*

Now, Petitioner brings forth the instant Petition for writ of habeas corpus in the United States District Court asserting two grounds for relief: (1) the court martial was barred from exercising subject matter jurisdiction as to the offenses of which it convicted Petitioner because the U.S. NATO Status of Forces Agreement ("SOFA") assigns those

---

[2] Petitioner also filed a petition for extraordinary relief in the nature of habeas corpus with the NMCCA. However, because Petitioner's discharge had been executed and the findings and sentence were final after his appellate review, his petition was denied for lack of jurisdiction due to his dismissal from the U.S. Navy in September of 2020. (ECF No. 15-1 at 4).

4

offense to the primary jurisdiction, an Italian court, which Italy did not waive; and (2) The Navy-Marine Corps did not fully and fairly conduct an Article 66, UCMJ Review as to specifications 5 and 7 of Charge I, because a contingent mens rea does not constitute an attempt under Art. 80, UCMJ.

Respondent has filed a motion to dismiss pursuant to Rules 12(b)(1) and (6) of the Federal Rules of Civil Procedure, or, in the alternative, for Summary Judgment pursuant to Rule 56. The Report recommends granting Respondent's Motion and dismissing the Petition with prejudice. (ECF No. 25). This Court agrees with the Report and accepts the Magistrate Judge's recommendation to dismiss the instant Petition. (ECF No. 1). However, because the Petitioner has filed objections to the Report, this Court will address Petitioner's specific objections in turn.[3] *See* 28 U.S.C. § 636(b); Fed. R. Civ. P. 72(b); *Carniewski v. W. Virginia Bd. of Prob. & Parole*, 974 F.2d 1330 (4th Cir. 1992).

I.    **Ground I: NATO SOFA**

   a.    **Petitioner's Objection that the Magistrate Judge Improperly Found Petitioner Lacks Standing is Overruled**

The Report concludes and this Court agrees that Petitioner lacks standing to allege a violation of an international treaty such as the SOFA which is applicable in this case.

Petitioner objects to the Report's conclusion on this basis. (ECF No. 27-8). Petitioner argues that the Report's conclusion regarding his lack of standing to "assert a

---

[3] Rather than addressing Petitioner's objections in the order in he has submitted them, this Order will address each of Petitioner's grounds for relief, the Report's respective recommendations as to those grounds, and the Petitioner's corresponding objections.

jurisdictional defect stemming from the NATO SOFA's jurisdictional rules" is incorrect. *Id.* Additionally, the Petitioner asserts he is not required to demonstrate standing to assert his court-martial was without subject matter jurisdiction. *Id.*

In Respondent's Reply to Petitioner's Objections, Respondent asserts Petitioner's objection is non-specific because it is a verbatim recitation of an argument he previously asserted in his Response in Opposition to Respondent's instant motion to dismiss. (*See* ECF No. 30 *comparing* ECF Nos. 20-2 & 27-8). Further, Respondent argues Petitioner's argument still fails because treaty violations must be addressed diplomatically between treaty members rather than raised by individual litigants and Petitioner has failed to provide any case law to suggest otherwise.

First, this Court finds Petitioner's objection to the Report's conclusion regarding Petitioner's lack of standing is non-specific because it is a verbatim rehashing of his previously asserted arguments which were considered and disregarded by the Magistrate Judge in the Report. *See Staley v. Norton*, No. 9:07-0288-PMD, 2007 WL 821181, at *1 (D.S.C. Mar. 2, 2007) (citing *Howard v. Secretary of Health and Human Services*, 932 F.2d 505, 509 (6th Cir. 1991)) ("Generally stated, nonspecific objections have the same effect as would a failure to object."). Nonetheless, Petitioner's argument still misses the mark. Petitioner argues the Report is incorrect because he is not required to demonstrate standing to challenge the subject-matter jurisdiction of a proceeding. However, this is not the Report's conclusion. The Report concludes Petitioner lacks standing to allege a violation of the NATO SOFA. Stated another way, if this Court assumes Petitioner is correct and this Court assumes Italy had exclusive jurisdiction and was required to waive

6

such jurisdiction prior to the United States exercising jurisdiction over Petitioner, then the United States' act of exercising jurisdiction without such waiver would be a violation of the NATO SOFA. Because this violation could only be challenged diplomatically between the nations which are parties to the treaty, Petitioner lacks standing.

Therefore, Petitioner's objection to the Report's conclusion regarding his lack of standing to challenge a violation of the NATO SOFA treaty is overruled.

### b. Petitioner's Objection that the Magistrate Judge Disregarded the Law of this Circuit Regarding the NATO SOFA Provisions is Overruled

The Report goes even further and finds that even if Petitioner had standing to challenge the alleged violation of the NATO SOFA, Petitioner has still failed to show how subject matter jurisdiction is lacking. (ECF No. 25-12).

Although thoroughly set out in the Report, briefly, the Report explains that the military court in Norfolk, Virginia had subject-matter jurisdiction over Petitioner to prosecute him for his offenses because subject-matter jurisdiction is established by showing military status at the time of the commission of an offense punishable by the UCMJ. (ECF No. 25 citing *United States v. Ali,* 71 M.J. 256, 261 (C.A.A.F. 2012); *Solorio v. United States,* 483 U.S. 435, 439 (1987)). Because it is uncontested that Petitioner was a senior officer in the United States military and on active-duty status at the time of the subject offenses, and those offenses were punishable under the UCMJ, the Report concludes and this Court agrees, subject-matter jurisdiction is established. *Id.* Thus, this Court agrees with the Report's conclusion and finds Petitioner has failed to demonstrate how subject-matter jurisdiction was lacking during his military trial.

Petitioner objects to the Report's conclusion on this basis and argues the Magistrate Judge disregarded the law of the Fourth Circuit. However, Petitioner fails to provide any case law from the Fourth Circuit to undermine the Report's conclusion. As Respondent states in his Reply, the Report has not disregarded the terms of SOFA or the weight of its authority, but rather, the Report simply finds the SOFA does not support Petitioner's position. ECF No. 30. Petitioner's disagreement with the Report's conclusion without further explanation or support is an insufficient basis for an objection and therefore, it is overruled.

Petitioner's objection on this basis continues as he criticizes the Magistrate Judge's use of various case law. Specifically, Petitioner challenges the Report's reliance on the following cases: *United States v. Choisnard*, No. ACM 36654, 2008 WL 2853036 (A.F. Ct. Crim. App. July 15, 2008); *Solorio v. United States,* 483 U.S. 435, 439 (1987); *Brazell v. Uddenberg,* No. 19-cv-01084-JLS-MSB, 2020 WL 6741673, at *3 (S.D. Cal. Nov. 17, 2020); *United States v. Murphy,* 50 M.J. 4, 7-8 (C.A.A.F. 1998); *Ponzi v. Fessenden*, 258 U.S. 254, 260 (1922); and *Solorio v. United States,* 483 U.S. 435, 439 (1987).

The Report uses *Choisnard* to support its conclusion that Petitioner lacks standing to challenge an alleged violation of the SOFA between the United States and Italy. And, even if Petitioner did have standing, the court-martial would have still had jurisdiction over the Petitioner because of his active-duty status. *Id.* ("These authorities provide that he has no standing to object to 'violations' of the SOFA and even if he did, the court-martial still would have jurisdiction because of the appellant's active-duty status."). Petitioner objects to the Report's use of *Choisnard* and argues that its holding is incorrect because the cases

8

it cites for support—*Murphy*, *Ponzi*, and *Solorio*—do not stand for such a proposition. As Respondent explains in his Reply and this Court agrees, Petitioner is mistaken.

The holding in *United States v. Murphy* does support the *Choisnard* opinion because it confirms a petitioner's lack of standing to allege a violation of a SOFA between the United States and a foreign country as a basis for challenging the United States exercise of jurisdiction over a member of the United States military for alleged crimes. United States v. Murphy, 50 M.J. 4 (1998). In *Murphy*, the petitioner was convicted of three offenses punishable by the UCMJ which were committed while the petitioner was on active duty in Germany. *Id.* at 6. The *Murphy* petitioner argued Germany had primary jurisdiction over him pursuant to a NATO SOFA and although such jurisdiction was waived, it was only waived because United States misinformed German officials. *Id.* at 6-7. The U.S. Court of Appeals for the Armed Forces in *Murphy* held that the petitioner had no standing to object to the process by which jurisdiction over him was obtained and further, even if the *Murphy* petitioner did have standing, his argument still fails because he was a member of the U.S. army at the time he committed his offenses. *Id* at. 7. Thus, Petitioner's argument here that *Murphy* does not stand for a proposition supportive of the holding in *Choisnard* is meritless and overruled.

Petitioner further objects to the Report's "misconstruction" of *Murphy*. Petitioner argues *Murphy* is inapposite to his claim because in *Murphy*, the government obtained a SOFA jurisdiction waiver from the foreign authorities. Additionally, Petitioner asserts *Murphy* only concerns *in personam* jurisdiction as opposed to subject-matter jurisdiction so the holding in *Murphy* is inapplicable to the issue at hand.

9

Unfortunately, Petitioner's attempts to draw distinctions between *Murphy* and the underlying facts of his own case are unsuccessful. As the Respondent points out, the fact that in *Murphy* the United States obtained a SOFA jurisdiction waiver from Germany and no waiver was obtained in Petitioner's case is not a meaningful distinction. *Id.* The U.S. Court of Appeals for the Armed Forces in *Murphy* still held that the *Murphy* petitioner did not have standing to allege a violation of a SOFA in an attempt to defeat the United States' jurisdiction over him for prosecution. *Id.* Further, while Murphy may concern *in personam* jurisdiction, other authority still supports subject-matter jurisdiction on the basis of military status. (*See* ECF No. 30 citing *United States v. Hennis*, 75 M.J. 796, 811 (A. Ct. Crim. App. 2016), aff'd, 79 M.J. 370 (C.A.A.F. 2020)). Therefore, Petitioner's objections to the Report's reliance on *Murphy* are overruled.

Next, Petitioner objects to the Magistrate Judge's alleged misconstruction of *Solorio v. United States*, 483 U.S. 435, 439 (1987) and *United States v. Ali,* M.J. 256, 261 (C.A.A.F. 2012) because Petitioner argues neither case stands for the proposition advanced by the Magistrate Judge. In *Solorio v. United States*, the Supreme Court of the United States held that "the jurisdiction of the court-martial depends solely on the accused's status as a member of the Armed Forces" and not on whether the offense charged has a connection to the military. *Solorio*, 483 at 435. Petitioner argues *Solorio* is not relevant to his claim because it did not address the limitations a SOFA could place on a military court's exercise of subject-matter jurisdiction. Although *Solorio* does not involve a SOFA, the holding is still relevant to this Court's analysis because at the time of the alleged offenses, Petitioner was undisputedly a member of the U.S. military. Further, as Respondent correctly points

out, *Murphy* and *Choisnard* involved a SOFA and jurisdictional questions but still cited to *Solorio* as additional support for finding jurisdiction over the accused. Therefore, Petitioner's objection as to the Report's use of *Solorio* is overruled.

Petitioner also objects to the Report's alleged misconstruction of *United States v. Ali,* 71 M.J. 256, 261 (C.A.A.F. 2012). Petitioner argues *Ali* is not relevant to the instant case because it did not involve a SOFA jurisdictional defect and like *Murphy*, it only involves *in personam* jurisdiction. *Id.* at 261-262. Further, Petitioner cites to the three prerequisites listed in *Ali* which must be met for court-martial jurisdiction to vest and argues these prerequisites were not met in his case. *Id.* at 261 ("[T]hree prerequisites must be met for courts-martial jurisdiction to vest: (1) jurisdiction over the offense; (2) jurisdiction over the accused; and (3) properly convened and composed court martial"). Petitioner explains it is the first prerequisite, "jurisdiction over the offense" which is lacking because Italy did not waive its primary jurisdiction. (*See* ECF No. 27 *citing* NATO SOFA, Art. VII, para. 8).

Like *Solorio* and *Murphy*, this Court finds *Ali* is still relevant to this Court's analysis. This Court does not review precedent in a vacuum and considers other case law which may provide further support or context to the decision in *Ali* and other cases like it. *See U.S. v. Hennis,* 75 M.J. 796, 811 (A. Ct. Crim. App. 2016) ("[A]n accused's military status at the time of the offense under the UCMJ is the sole criterion for establishing <u>subject matter jurisdiction</u> in a court-martial, capital or otherwise), aff'd 79 M.J. 370 (C.A.A.F. 2020) (emphasis added).

Additionally, as to Petitioner's argument that the first prerequisite, "jurisdiction over the offense", is lacking, this Court looks to the Report which resolved this argument. As the Report explains, Article VII, paragraph 3(a)(i) of the NATO SOFA states that the military authorities of the United States "shall have the *primary* right to exercise jurisdiction over a member of a force" in relation to "offenses solely against the person or property *of another member of the force* or civilian component of that State *or of a dependent*." (emphasis added). Because Petitioner's crime was an attempt to commit a sexual act with a minor U.S. citizen and dependent of two United State government employees in violation of the UCMJ on United States' military property in a foreign jurisdiction, the United States had primary jurisdiction over Petitioner's offense and did not require a waiver from Italy to exercise such jurisdiction. Therefore, Petitioner's argument that the first prerequisite is lacking is overruled.

Finally, Petitioner objects to the Report's reliance on *Brazell v. Uddenberg,* No. 19-CV-01084-JLS-MSB, 2020 WL 6741673, at *3 (S.D. Cal. Nov. 17, 2020) and failure to consider *Risinger v. SOC LLC*, 2014 U.S. Dist. LEXIS 26047, *8 (D. Nev. 2014) which Petitioner argues stands for the opposite of *Brazell.* The Magistrate Judge likely chose not to consider *Risinger* because the underlying facts are vastly different than those of the instant matter. However, this Court finds *Risinger* helpful, though not for the reasons suggested by Petitioner.

In *Risinger*, the district court analyzed the terms of the SOFA between the United States and Iraq as it pertained to American contractors performing work in Iraq. *Id.* The applicable SOFA in *Risinger,* much like the SOFA at issue here, contained plain

unambiguous language assigning "the primary right to exercise jurisdiction" to Iraq and the United States as to certain categories of disputes. *Id.* at 2. The SOFA at issue in *Risinger* stated that Iraq shall have "the primary right to exercise jurisdiction over United States contractors and United States contractor employees." *Id.*   Based on this plain language, the court found Iraq had the primary right to exercise jurisdiction over Plaintiff's Iraqi law claims. *Id.* Because Iraq had not declined to exercise this right or waive this right to jurisdiction, the Court found it lacked jurisdiction over these claims. *Id.* at 4.

Petitioner argues *Risinger* supports his claim of a jurisdictional defect in his military proceedings because the Court in *Risinger* recognized the necessity of a waiver of jurisdiction from the foreign country which did not occur in his case. However, the underlying facts of *Risinger* along with contrasting terms of each SOFA suggests the exact opposite conclusion. *Risinger* did not involve criminal charges and the terms of the *Risinger* SOFA also concern private contracting companies as opposed to members of the United States military committing crimes. This Court does not find *Risinger* to be analogous to Petitioner's case such that the Report was in error for failing to consider it as supporting authority for Petitioner's claim of a jurisdictional defect.

However, this Court does find *Risinger* helpful for its analysis of the SOFA at issue in its case. The *Risinger* court completed a plain reading of the SOFA to reach its conclusion regardless of the parties' unique interpretations of its terms. *Id.* at 2.  If this Court follows the reasoning set forth by the *Risinger* Court when considering the SOFA at issue here, this Court still finds that the United States has "the primary right to exercise jurisdiction" over Petitioner because he was a member of the U.S. military and he

committed offenses which were "solely against the person or property of another member of the force or civilian component of that State or of a dependent…" because his offense was the attempted sexual abuse of a minor, U.S. Citizen and dependent of two United States government employees. NATO SOFA, 4 U.S.T. 1792, Art. VII(3)(a)—(b), 1953 WL 44517, at *3-4.

Therefore, Petitioner's objection that the Report was in error for failing to consider *Risinger* is overruled.

> ### c. Petitioner's Objection that the Magistrate Judge Allegedly Incorrectly Disregarded his Right to Raise Issues with the NATO SOFA's Double Jeopardy Provision is Overruled

Petitioner argues that the Magistrate Judge should have found he has standing to allege a SOFA violation because he has double jeopardy concerns that Italy could still prosecute him for his crimes. Although Petitioner makes a variety of arguments on this basis which are addressed below, Petitioner's main point is that the SOFA granted him the personal right to double jeopardy protection which did not attach because of the United States' failure to obtain a waiver of Italy's primary jurisdiction. Because Petitioner asserts, he could still be prosecuted by Italy, he contends he has standing to challenge the court-martial's lack of jurisdiction over him.

Petitioner's argument fails because it misconstrues the function of the SOFA's double jeopardy provision. As the Respondent explains, the SOFA's double jeopardy bar comes into play after a defendant has been acquitted, convicted, or pardoned in one court system. *See* NATO SOFA, Art. VII, para. 8. Accordingly, in that the event two party governments were unable to diplomatically resolve who should prosecute someone for an

offense, then the defendant could invoke the double jeopardy bar once his first prosecution concludes. Here, the United States prosecuted Petitioner for his crimes and there has been no hint of Italy also seeking to prosecute Petitioner. Therefore, Petitioner has no standing to invoke the double jeopardy provision or use it as a way to challenge the court-martial's jurisdiction.

As to Petitioner's other arguments on this basis, Petitioner first cites to *United States v. Green*, 14 M.J. 461, 464 (C.M.A. 1983) as support for his argument. Specifically, Petitioner contends the "double jeopardy provision of NATO SOFA, Art. VIII, para. 8 is a personal right in which [he] has a personal interest" and *Green* along with *Plaster v. United States,* 720 F.2d 340, 355, n. 29 (4th Cir. 1983), support his ability to challenge the jurisdiction of the military court on this basis.

However, as Respondent explains in his Reply, *Green* does not support Petitioner's position and this Court finds neither does *Plaster.* In *Green*, the court held that a defendant who had already been convicted in a British civilian court could invoke the SOFA's double jeopardy rules to contest the U.S. military's later prosecution of him for related offenses. *Green*, 14 M.J. at 464. Significantly, the *Green* court did not find individual litigants have a right to contest other types of treaty violations. *Id.* Rather, that court noted, "the general rule is that standing to contest an alleged treaty violation may not be assumed but can only be asserted where the treaty clearly indicates an intention to create present enforceable rights for the individual." *Id.* This Court agrees with the Report's finding that the applicable SOFA's provisions on which country prosecutes an individual first does not confer individual rights upon litigants to allow them to later challenge jurisdiction on this basis.

Further, Petitioner attempts to use *Plaster* to argue that he has standing to challenge the jurisdiction of his military proceedings because the double jeopardy provision of the NATO SOFA provides him with a personal right. This Court does not find *Plaster* stands for such a clear-cut proposition that is directly applicable to Petitioner's case. *Plaster* involved the issue of whether double jeopardy attached, for purposes of the SOFA, where the disposition of the United States' charges against that defendant resulted in an immunity agreement. *Plaster*, 720 F.2d at 352-55. *Plaster's* underlying facts and ultimate holding do not stand for the proposition asserted by Petitioner and further, is inapplicable to the issue at hand. Therefore, the Court overrules Petitioner's objection on this basis.

Petitioner also objects to the Magistrate Judge's finding that Italy and the United States may exercise jurisdiction over the same offense under the SOFA. Petitioner argues that such a finding renders the SOFA's double jeopardy provision meaningless. First, the Magistrate Judge does not conclude that Italy and the United States may both exercise jurisdiction over the same offense. As put forth in the Report, the Magistrate Judge finds Petitioner's argument that Italy had the primary right to jurisdiction meritless, and further, even if Italy did have the primary right to exercise jurisdiction, the Report disagrees with Petitioner's argument that Italy's "primary right" to exercise jurisdiction was exclusive until it was waived because this same contention has been rejected by other military courts. (ECF No. 25 citing *Brazell v. Uddenberg*, No. MC 2018-08, 2019 WL 366306, at *3 (A.F. Ct. Crim. App. Jan. 28, 2019)). Therefore, the Court overrules Petitioner's objection on this basis.

Next, Petitioner criticizes the Report's use of *Patterson v. Wagner*, 785 F.3d 1277, 1285 (9th Cir. 2015). The Report cites to *Patterson* as support for its conclusion that Petitioner does not have standing to allege a violation of an international agreement like the SOFA because violations of SOFA treaties should be addressed diplomatically between two nations. *Id.* ("The [U.S.— South Korea] SOFA's provisions thus establish a diplomatic conflict resolution scheme with no role for the judiciary."). Petitioner argues *Patterson* stands for the "proposition that an American citizen who seeks to enforce a SOFA double jeopardy provision against a foreign power must do so 'in the courts of [that] country.'" *Id.* citing *Edye v. Robertson*, 112 U.S. 580, 598 (1884). This Court agrees with Respondent that Petitioner's criticisms are a verbatim rehashing of those found in his Response in Opposition to Respondent's Motion to Dismiss and as such, do not trigger *de novo* review. *See* ECF No. 20-3-5. However, even after reviewing *Patterson* alongside Petitioner's criticisms, the Court still finds Petitioner's arguments fail because Petitioner does not recognize *Patterson's* ultimate holding—that the individual rights created by the treaty at issue were not judicially enforceable. *Id.* at 1284. Therefore, the Court overrules Petitioner's objection on this basis.

Petitioner also objects the Magistrate Judge similarly misrelies upon *Matter of Burt*, 737 F.2d 1477, 1488 (7th Cir. 1984) and *Holmes v. Laird*, 459 F.2d 1211, 1222 (D.C. Cir. 1972). Petitioner argues these cases involve attempts to enforce the NATO SOFA against foreign governments, not against the United States. Additionally, Petitioner asserts these cases are inapposite to the facts of his case because the United States acted in conformity with the NATO SOFA in those instances, whereas here, Petitioner argues the government

did not comply with the SOFA because it did not obtain a waiver of jurisdiction from Italy. This Court agrees with the Respondent and finds these facts were not the reason the Report cited to these cases. Each of the cases cited above involved the court deciding that the treaties at issue provided they were to be vindicated diplomatically, not judicially. *Matter of Burt*, 737 F.2d 1477, 1488 (7th Cir. 1984) (("[I]t is well settled that the recourse for such a treaty violation in these circumstances is diplomatic, not judicial."); *Holmes v. Laird*, 459 F.2d 1211, 1222 (D.C. Cir. 1972) ("[T]he rights [appellants] claim to the provisions of an international agreement the enforcement mechanism of which is diplomatic recourse only."). Therefore, the Court overrules Petitioner's objection on this basis.

Finally, Petitioner objects to the Magistrate Judge's characterization of "standing" as a requirement that has been deeply considered by military courts. Petitioner argues, in reality, that this requirement rests solely on two unreported decisions rather than a long line of cases. This Court agrees with the Respondent and finds the Report does not actually make such an assertion and instead, the Report notes that courts have held litigants lack standing to challenge violations of a NATO SOFA. Petitioner also contends the Report should not be prioritizing these two unreported cases above "the law of the [Fourth] Circuit," however, Petitioner does not cite to any circuit authority providing him standing to challenge a violation of the NATO SOFA. Therefore, this objection is overruled.

Thus, Petitioner's objections and various supporting arguments regarding the NATO SOFA's double jeopardy provision are overruled because this Court finds such provision does not provide Petitioner with standing to challenge the jurisdiction of the court-martial during his military proceedings.

18

### d. Petitioner's Objection that the Magistrate Judge Allegedly Incorrectly Found the NATO SOFA Provides the United States with Primary Jurisdiction is Overruled

Petitioner objects to the Magistrate Judge's finding that the NATO SOFA provides the United States with primary jurisdiction for the inchoate offenses of which he was convicted. Petitioner's argument is a rehashing of the argument he presented in his Response in Opposition to Respondent's Motion to Dismiss. Petitioner asserts his charged offenses were not "against the person" of a servicemember, civilian component member or dependent. In fact, Petitioner contends they were not "against the person" of anyone because he only communicated with the minor, S.M. Additionally, Petitioner objects to the Magistrate Judge's failure to construe the term of art "against the person" in light of the common law meaning of the term.

Petitioner's arguments are unavailing as he does not point to a clear error in the Report with sufficient contradictory supporting authority to allow this Court to sustain his objections on this basis. Further, his arguments are a rehashing of arguments previously presented and considered within the Report. Finally, this Court is not persuaded by Petitioner's nebulous argument that his crimes were not actually "against the person" of the minor, S.M. because he only texted with her on a cell phone. The undisputed evidence demonstrates Petitioner's desire to sexually abuse minor, S.M. because he attempted to meet her with wine, condoms, and lubricant in his possession. (ECF No. 30-15).

Therefore, Petitioner's objection that the United States lacks primary jurisdiction because his underlying offenses were not "against the person" of a servicemember, civilian, or dependent is overruled.

### e. Petitioner's Objection to the Magistrate Judge's Reliance on Rule for Courts Martial 201 is Overruled

Petitioner objects that the Magistrate Judge allegedly misrelied on Rule for Courts-Martial ("R.C.M") 201(d)(3). Petitioner argues R.C.M. 201(d)(3) does not stand for the proposition that Petitioner may not, in a civilian court, object to a jurisdictional defect. Petitioner asserts the Rules for Courts-Martial have no bearing in this Court because they promulgated for military courts alone. Further, Petitioner argues that even if the Rule were applicable to the instant proceedings, the Magistrate Judge has misconstrued it. Petitioner asserts this Rule stands only for the proposition that a "servicemember may not complain of the method by which the United States obtains a release of jurisdiction from a foreign sovereign…" (ECF No. 27-23).

R.C.M. 201(d)(3) states: "where an act or omission is subject to trial by court-martial and by one or more civil tribunals, foreign or domestic, *the determination which nation, state, or agency will exercise jurisdiction is a matter for the nations, state, and agencies concerned, and is not a right of the suspect or accused.*" (emphasis added). This Court agrees with Respondent and finds that the Report does not suggest that the Rule precludes a federal district court under Article III from considering jurisdictional challenges. The Report used this Rule as further confirmation that an individual litigant such as Petitioner may not avoid prosecution by challenging which court, foreign or domestic, he should have to answer to for his crimes.

Further, Petitioner's argument that the Rule stands for the proposition concerning the method by which the United States obtains a release of jurisdiction from a foreign

sovereign is undercut by the plain language of the Rule and lack of such a statement or reference to waiver.

Therefore, Petitioner's objection as to the Magistrate Judge's alleged misconstruction of R.C.M. 201(d)(3) is overruled.

### f. Petitioner's Objection to the Magistrate Judge's Alleged Failure to Consider R.C.M. 201(d)(3) as a Presidential Withholding of Court-Martial Convening Authority

Petitioner contends that the Magistrate Judge erred by not addressing and adopting the commentary to R.C.M 201(d)(3). Specifically, Petitioner argues the commentary to that Rule provides a court-martial is without jurisdiction to try an accused for acts committed in a friendly nation unless that sovereign relinquishes its jurisdiction. However, like Petitioner's argument in the previous section, the plain language of the commentary undercuts his argument.

The commentary to Rule 201(d) states the following:

> Under international law, a friendly foreign nation has jurisdiction to punish offenses committed within its borders by members of a visiting force, unless it expressly or impliedly consents to relinquish its jurisdiction to the visiting sovereign. **The procedures and standards for determining which nation will exercise jurisdiction are normally established by treaty.** *See, e.g.,* NATO Status Forces Agreement, June 19, 1951, 4 U.S.T. 1792, T.I.A.S. No. 2846. As a matter of policy, efforts should be made to maximize the exercise of the court-martial jurisdiction over persons subject to the UCMJ to the extent possible under applicable agreements.

R.C.M. 201(d), Discussion (emphasis added). The commentary explicitly states a foreign nation can expressly or impliedly relinquish its jurisdiction and the treaties between the nations guide the analysis of whether a nation has relinquished that power. This Court

agrees with the Respondent that Petitioner's argument continues to go back to the same basic theory: The military courts lacked subject matter jurisdiction over him because the military violated the NATO SOFA. However, as multiple types of authority have confirmed, including the commentary to Rule 201(d), the procedure determining which nation will exercise jurisdiction is established by treaty and the applicable SOFA makes clear that the United States has primary jurisdiction over him.

Finally, Petitioner makes additional arguments regarding the President's intention and policy reasons behind the courts-marital rules. This Court finds these arguments to be unavailing because they do not appear relevant to the issue at hand—whether Rule 201(d) provides Petitioner with standing to challenge the jurisdiction of the courts-martial. Because Petitioner's arguments as to the President's intention behind the construction of the courts-martial rules does not answer this question, the Court finds Petitioner's arguments to be unsuccessful.

Therefore, Petitioner's objections as to the Magistrate Judge's asserted failure to consider the commentary of Rule 201(d) are overruled.

## II.    Ground II: Petitioner's Mens Rea

Petitioner's second asserted ground for relief is that the NMCCA did not properly conduct a review of his case because that the court purportedly failed to apply proper legal standards in affirming his conviction. Specifically, as explained in the Report, Petitioner claims that "contingent mens rea" is not found within the UCMJ and cannot constitute an attempt under Article 80. (*See* ECF No. 25-15).

The Report recommends Petitioner's ground II claim be dismissed because this Court is precluded from re-reviewing grounds which have received full and fair consideration by the military courts. As thoroughly set out in the Report, the military courts have fully and fairly considered Petitioner's claim because the nature of his intent was litigated during all phases of his courts-martial. Further, Petitioner also appealed on this same ground and the NMCCA found Petitioner possessed the requisite *mens rea* for his crime of attempted sexual assault. Because these grounds received full and fair consideration, the Report concludes, and this Court agrees that habeas review is not warranted as it would require this Court to impermissibly re-assess the evidence. Accordingly, this Court addresses Petitioner's objections to the Report's conclusions on Ground II in turn below.

### a. Petitioner's Objections to the Magistrate Judge's Alleged Mischaracterization of the NMCCA Holding Concerning Petitioner's *Mens Rea* as to Ground II

Petitioner objects to the Magistrate Judge's alleged mischaracterization of the NMCCA holding because Petitioner argues the Magistrate Judge incorrectly finds the NMCCA held that Petitioner had non-conditional specific intent and this finding is not supported by the NMCCA decision. Instead, Petitioner asserts that the NMCCA found there was a condition precedent on his intended actions with minor, S.M. Because "contingent *mens rea*" is not found within the UCMJ, Petitioner argues he is raising a legal issue, not a factual issue, and accordingly, the Magistrate Judge should have evaluated the legal decisions of the military courts as a part of a proper habeas review.

First, this Court finds the Magistrate Judge did not mischaracterize the NMCCA's holding, but rather, Petitioner misstates the NCMAA decision. Petitioner strategically bolds the portion of the decision which states, "**we hold that the condition on the appellant's intended actions with S.M.**" and uses this portion to argue the NMCCA found a condition precedent to his intent. However, the NMCCA continues stating the condition on his intended actions with S.M…does not negate the appellant's specific intent to do those things." Accordingly, Petitioner's basis for asserting the Report mischaracterized the NMCCA decision is unfounded because the NMCCA did not hold that Petitioner had "conditional intent" as he purports.

Additionally, the Report thoroughly lays out the factual and procedural history of Petitioner's litigation as well as his appeals process. Following the Report's recitation of Petitioner's history within the military courts' system, the Report concludes that this Court is precluded from re-reviewing issues—particularly Petitioner's conditional intent argument as outlined above—which have already been fully and fairly considered by the military courts.

Along this same vein, Petitioner asserts that Magistrate Judge incorrectly found this Court could not consider Petitioner's argument on this basis because the Magistrate Judge characterized it as a factual issue requiring this Court to improperly "re-assess" the evidence when Petitioner is really asserting a legal issue warranting habeas review. Although the Report uses the term "re-assess," this Court agrees with Respondent and finds that the Magistrate Judge was not purporting to improperly re-weigh evidence. Based on the context surrounding this term in the Report, it is clear that the Magistrate Judge

understood Petitioner's argument to be a legal one as she states in the Report, "Petitioner's second asserted ground for relief is that the NMCCA…. failed to apply proper legal standards in affirming his conviction…" (ECF No. 25-15).

Regardless of the Petitioner's construction of the Magistrate Judge's findings, Petitioner is still asking this Court to conduct an "evaluation of the legal decisions of Article I officials" through his habeas corpus Petition. This Court finds that such a review is improper. The military courts gave this issue full and fair consideration and accordingly, this Court agrees with the Report and finds that it is precluded from conducting a merits review. *See Lips v. Commandant, U.S. Disciplinary Barracks,* 997 F.2d 808, 811 (10th Cir. 1993).

Therefore, Petitioner's objection as to the Magistrate Judge's mischaracterization of the NMCCA decision regarding Petitioner's *mens rea* is overruled.

### b. Petitioner objects to the Magistrate Judge's Alleged Failure to Consider Whether an Attempted Offense Based on Contingent *Mens Rea* is within the Subject Matter Jurisdiction of the Military Courts

Petitioner argues that the Magistrate Judge incorrectly failed to consider whether the NMCCA had subject matter jurisdiction to affirm a conviction based on contingent intent because the UCMJ does not criminalize contingent intent.

This Court finds the Report did not consider Petitioner's argument on this basis because Petitioner did not assert it in his habeas petition. Not only did Petitioner not assert it in his habeas petition but he also did not raise it in the military courts. Petitioner asserted this basis for relief for the first time in his Response in Opposition to Respondent's Motion. Accordingly, this newly raised claim could not have been considered by the Magistrate

Judge and is not properly before this Court. *See, e.g., Bridgeport Music, Inc. v. WM Music Corp.,* 508 F.3d 394, 400 (6th Cir. 2007) (holding that a party may not expand its claims to assert new theories in response to summary judgment); *White v. Roche Biomedical Labs., Inc.,* 807 F. Supp. 1212, 1216 (D.S.C. 1992) (noting that "a party is generally not permitted to raise a new claim in response to a motion for summary judgment"); *See also Roberts v. Callahan,* 321 F.3d 994, 995 (10th Cir. 2003) (holding that claims that were not raised in the military courts are deemed to be waived).

Despite this claim never previously being raised, this Court still finds Petitioner's argument lacks merit. Petitioner attempts to argue, "if a charge fails to allege an offense under the code [UCMJ], a court-martial lacks jurisdiction to try it and its proceedings as to that charge are a nullity." (ECF No. 27-4). Stated another way, because his charges were based on "contingent intent" which is not a *mens rea* criminalized by the code, Petitioner argues the court-martial lacked authority to prosecute him and accordingly, the military proceedings against him are a nullity. This Court is not persuaded by Petitioner's argument. First, Petitioner is the only one to recognize "contingent intent." His argument is based on a mischaracterization of the NMCCA's holding which he asserts finds he had "contingent intent," but it did not. Further, even viewing the evidence in the light most favorable to Petitioner and finding the charge is based on conditional intent, Petitioner's argument still amounts to a defect in the pleadings which are not jurisdictional. *See United States v. Humphries*, 71 M.J. 209, 212 (2012) *citing United States v. Cotton*, 535 U.S. 625, 122 S.Ct. 1781, 1782 (2002) ("a defective indictment does not deprive a court of jurisdiction").

Therefore, Petitioner's objection as the Report's alleged failure to consider his jurisdictional argument based on his contingent *mens rea* is overruled.

### c. Petitioner Objects to the Magistrate Judge's Finding that a Civilian Court May Never Review the Legal Conclusions of Military Courts During Habeas

Petitioner objects to the Report's conclusion that a civilian court can never review a military court's legal conclusions. Petitioner argues that this Court can consider a military petitioner's legal claims on the merits where the CAAF has considered but summarily denied review of a substantial constitutional issue. He asserts his issue regarding the UCMJ's failure to criminalize attempt based on contingent intent is substantially constitutional in nature.

First, this Court notes that Petitioner's objection is a rehashing of the arguments presented in his Response in Opposition and as such, does not constitute a valid objection. Further, Petitioner's objections do not point to a clear error in the Report with sufficient contradictory authority to allow this Court to sustain his objections on this basis. Finally, Petitioner's objections still amount to the same basic premise—he had contingent *mens rea* to commit the crimes alleged and such *mens rea* is not criminalized within the code, therefore, the courts-martial lacked jurisdiction and the military proceedings are a nullity. As this Court has repeatedly found throughout this Order, Petitioner's objections lack merit because the NMCCA found Petitioner had specific intent and further, Petitioner's charge based on his specific type of *mens rea* is not a basis for a jurisdictional challenge or cause for nullifying the military proceedings against him. After a review of the Petitioner's

objections along with the Report, this Court finds Petitioner's objections are meritless and are overruled on this basis.

## IV.     CONCLUSION

After carefully reviewing the applicable laws, the record in this case, the Report, the objections thereto, and Respondent's Reply, this Court finds that the Magistrate Judge's recommendation fairly and accurately summarizes the facts and applies the correct principles of law. The Report is incorporated herein by reference. Accordingly, this Court adopts the Magistrate Judge's Report and Recommendation. (ECF No. 25). Thus, Respondent's Motion to Dismiss (ECF No. 15) is granted and this matter is dismissed with prejudice.

IT IS SO ORDERED.

September 28, 2022                                       Joseph F. Anderson, Jr.
Columbia, South Carolina                          United States District Judge